1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10

11    PAULINE HARRINGTON,              )   Civil No. 07cv1330 JM(RBB)
                                       )
12                    Plaintiff,       )   **ORDER GRANTING IN PART**
                                       )   **PLAINTIFF'S MOTION FOR SUMMARY**
13    v.                               )   **JUDGMENT [DOC. NO. 18],**
                                       )   **DENYING DEFENDANT'S CROSS-**
14    COMMISSIONER OF SOCIAL SECURITY  )   **MOTION FOR SUMMARY JUDGMENT**
      ADMINISTRATION,                  )   **[DOC. NOS. 19, 20], AND**
15                                     )   **REMANDING FOR FURTHER**
                      Defendant.       )   **PROCEEDINGS**
16    _____)

17

18         Plaintiff, Pauline Harrington, seeks judicial review of Social

19    Security Commissioner Michael J. Astrue's determination that she is

20    not entitled to Disability Insurance Benefits and Supplemental

21    Security Income payments.  On July 23, 2007, Plaintiff filed her

22    Complaint for Judicial Review and Remedy on Administrative Decision

23    Under the Social Security Act [doc. no. 1].  Defendant filed an

24    Answer [doc. no. 11] and filed the Administrative Record [doc. no.

25    12] on November 8, 2007.

26         Plaintiff filed a Motion for Summary Judgment [doc. no. 18] on

27    May 3, 2008, with a Memorandum in Support of Motion, requesting

28    that this Court reverse Administrative Law Judge ("ALJ") Larry

Parker's October 16, 2006, decision and order the payment of benefits. (Pl.'s Mem. P. & A. 25.)  On June 6, 2008, Defendant filed two identical Cross-Motions for Summary Judgment [doc. nos. 19, 20].  Neither party filed an opposition to the Motion for Summary Judgment filed by the other.

The Court finds this matter is suitable for decision without oral argument pursuant to Civil Local Rule 7.1(d)(1).  S.D. Cal. Civ. L.R. 7.1(d)(1).  For the reasons set forth below, the Court **GRANTS** in part Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Cross-Motion for Summary Judgment, and **REMANDS** to the Commissioner for further proceedings.

## I.  BACKGROUND

Plaintiff was born on January 5, 1957; she was forty-nine years old at the time of the ALJ's decision. (Admin. R. 21, 249.) She has a high school education and past relevant work experience as a nurse's assistant, school cafeteria cook, and fast food cook. (Id. at 21.)  Plaintiff claims to be disabled due to degenerative osteoarthritis, obesity, diabetes mellitus, hypertension, atypical chest pain, status post-knee surgery, depression, and diabetic pedal neuropathy. (Id. at 18, 249, 296-97.)

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments on April 1, 2005. (Id. at 16.)  Her claim was denied, and the denial was upheld by the Social Security Administration ("SSA") after reconsideration.  (Id.)  A hearing was held before ALJ Larry Parker on October 3, 2006.  (Id. at 316.)  He issued a written decision on October 16, 2006, finding Harrington was not disabled. (Id. at 23.)  The denial of benefits became final when the Appeals

1  Council upheld the ALJ's decision on May 24, 2007.  (Id. at 6-8.)

2  Plaintiff then commenced this action for judicial review pursuant

3  to 42 U.S.C. §§ 405(g), 1383(c)(3) on July 23, 2007.  (Compl. 1);

4  see 42 U.S.C.A. §§ 405(g), 1383(c)(3) (West 2008).

5                        II.  MEDICAL EVIDENCE

6  A.   Plaintiff's Treating Physicians

7       On October 2, 2001, Plaintiff complained of pain in her feet,

8  legs, hands and joints, and Doctor Gregory B. Fox diagnosed her

9  with hypertension, obesity, fatigue, and menopause/vasomotor

10 symptoms.  (Admin. R. 157-58.)  The physical examination showed she

11 enjoyed full range of motion at all joints and no inflammation.

12 (Id. at 157.)  Harrington was diagnosed with fatigue,

13 menopause/vasomotor symptoms probable perimenopausal, hypertension,

14 and obesity and recommended a low-fat and low-salt diet.  (Id.)

15 Doctor Fox, on February 13, 2002, diagnosed Plaintiff with chronic

16 hypertension and diabetes.  (Id. at 152-53.)

17      On April 29, 2004, Plaintiff saw Christina M. Anderson, a

18 certified physician's assistant ("PA-C"), and complained of a

19 lesion on her right upper posterior thigh.  (Id. at 174.)  A

20 physical examination the following week showed that the lesion was

21 healing.  (Id. at 173.)  During that visit, Plaintiff "request[ed]

22 [a] statement that she needs to not work right now so that she can

23 get her health in order[,]" explaining that "[s]he has severe pain

24 that is unable to be controlled [by] meds and can be covered by

25 son-in-law's insurance if she lives with them and cannot work."

26 (Id.)

27      On May 19, 2004, Anderson prepared a statement that Plaintiff

28 had hypertension, diabetes mellitus type 2, depression, allergic

rhinitis and arthritic pain and that her osteoarthritis caused pain
in her knees, hands, shoulders and hips, which progressively
worsened and could not be controlled by conservative medical
therapy or rest. (<u>Id.</u> at 171.) The physician's assistant listed
prescribed medications for hypertension, diabetes mellitus and
allergic rhinitis, but she did not list any medication for
osteoarthritis. (<u>Id.</u>) Anderson explained that Plaintiff was
"unable to maintain one posture or perform motor activities for an
extended length of time[]" and that "employment at this time [was]
impractical." (<u>Id.</u>)

On January 18, 2005, Plaintiff complained of experiencing
"light headedness/dizziness" during the prior two weeks. (<u>Id.</u> at
183.) She was referred to the "ER" for a workup. (<u>Id.</u>) On April
25, 2005, Plaintiff returned to Anderson and complained of stomach
pain and "burning like acid reflux." (<u>Id.</u> at 170.) The
physician's assistant prescribed medication for hypertension,
diplopidemia, and diabetes mellitus; Anderson also recommended
dieting and exercise. (<u>Id.</u>)

Plaintiff saw Dr. Lori Strohecker on October 11, 2004, and on
July 14, 2005; she complained of dizziness when she gets up or lies
down and "off and on" chest pain. (<u>Id.</u> at 203, 280.) She also had
pain in her hands, lower back, and chest. (<u>Id.</u> at 280.) On July
26, 2005, Plaintiff asked for a refill of medication and complained
of feeling light-headed and experiencing dizziness lying down.
(<u>Id.</u> at 201, 278.) A cardiology consultation was recommended.
(<u>Id.</u> at 279-80.)

Dr. Tri T. Nguyen, a cardiologist, saw Plaintiff on July 29,
2005, for complaints of brief sharp chest pain, brief dull pressure

chest pain, palpitations twice a week, and dizziness.  (<u>Id.</u> at
211-216, 284-287.)  She stated that she had "[n]o known drug
adverse reaction."  (<u>Id.</u> at 211.)  The doctor performed an exercise
treadmill test, during which Plaintiff achieved 86% of the
predicted maximum heart rate for her age and 7.7 metabolic
equivalents (METs) without any exercise-induced dyspnea or chest
pain.  (<u>Id.</u> at 212.)  An ecocardiogram showed normal sinus rhythm
and mild left ventricular hypertrophy.  (<u>Id.</u>)  The ecocardiogram
findings were consistent with hypertensive heart disease.  (<u>Id.</u>)
Dr. Nguyen opined that Plaintiff did not have severe coronary
artery disease, but she had significant risk factors, including
diabetes mellitus, hypertension, hyperlipidemia, and obesity.
(<u>Id.</u>)  Dr. Nguyen recommended a strict diet and increased exercise.
(<u>Id.</u>)

On September 1, 2005, Plaintiff complained to Dr. Strobecker
of pain in her hands, joints and knees.  (<u>Id.</u> at 276.)  She was
told to take Tylenol for the pain and to continue her other
medication.  (<u>Id.</u>)  Harrington returned to Dr. Strobecker on
December 7, 2005, and described pain in her knees and fingers,
difficulty sleeping, and dizziness.  (<u>Id.</u> at 275.)  She also asked
for of refill of all her medications. (<u>Id.</u>)

On April 28, 2006, Plaintiff saw Martin Taubman, D.P.M., for a
foot evaluation and complaints of painful/numb feet and bilateral
bunions.  (<u>Id.</u> at 298.)  At that appointment and again on September
1, 2006, Harrington denied past or present dizziness.  (<u>Id.</u> at
296-98.)  Dr. Taubman's diagnoses included diabetic pedal
neuropathy, onychomycosis, arteriosclerotic foot disease, and

1   bunions on both feet.  (Id.)  He gave counseling on diabetes

2   mellitus foot care and recommended roomy shoes. (Id.)

3        On March 20, and April 11, 2006, Harrington reported that she

4   walked about two miles twice a week.  (Id. at 261, 265.)  Her

5   physician instructed her to diet, walk twenty minutes three times a

6   week, and sign up for swim class to treat obesity.  (Id. at 261.)

7   At her next appointment, Plaintiff stated that her arthritis was

8   bothering her and explained that she walked three times a week a

9   distance of about one and one-half miles.  (Id. at 259.)  She was

10  assessed as having arthritis and instructed to try water aerobics.

11  (Id.)

12       On September 16, 2006, Plaintiff complained that she had back

13  pain and that her knee "pops" and hurts; she was prescribed Elavil

14  for pain and told to exercise.  (Id. at 253.)  The following week,

15  Plaintiff's treating physician advised her to watch her diet, start

16  water aerobics or continue walking three times a week to help with

17  her pain.  (Id. at 252.)  It was also noted that Plaintiff had lost

18  thirty pounds to 264 pounds in six months.  (Id.)

19  **B.   Examining Physicians**

20       On July 27, 2005, Ajit Raisinghani, M.D., a board-certified

21  internist and cardiologist, performed an internal medicine

22  evaluation of the Plaintiff.  (Id. at 190-94.)  Harrington

23  described constant and chronic joint pain in her hands, legs,

24  knees, hips, shoulders and back which worsened with physical

25  activity, "although she does stand and walk about 20 minutes."

26  (Id. at 190.)  Plaintiff also complained of off-and-on chest pain

27  during the prior five months, usually occurring at night and

28  occasionally with exertion.  (Id.)  Harrington claimed to have

6

1   taken medication for joint pain, and she had been given

2   nitroglycerin but experienced hot sweats, palpitations, and

3   dizziness from it.  (Id.)  Plaintiff weighed 291 pounds and was

4   described as fairly obese.  (Id. at 191, 193.)

5       Dr. Raisinghani reported that Plaintiff's handgrip and wrist

6   range of motion were normal, with no joint deformity or warmth.

7   (Id. at 191-92.)  He noted that the range of motion in her neck,

8   back, shoulders, elbows, hands, wrists, hips, knees, feet, and

9   ankles was normal despite bilateral knee crepitus and complaints of

10  tenderness when touching her forearm and pain in her hands at

11  various joints.  (Id. at 192-93.)  The doctor explained that

12  Plaintiff's diffuse joint pain did not represent any form of

13  connective tissue disease, and except for crepitus in both knees,

14  there was no overt effusion, swelling, or warmth of any joints.

15  (Id. at 193.)

16      Dr. Raisinghani described the Plaintiff's limitations as

17  follows:  "Lift/carry 20 pounds occasionally.  Lift/carry 10 pounds

18  frequently.  Stand and/or walk up to six hours in an eight-hour

19  day.  Bend/crouch occasionally.  Sit for six hours in an eight-hour

20  day."  (Id.)

21      Matthew Carroll, M.D., a board-certified psychiatrist,

22  performed an adult psychiatric evaluation on Harrington and

23  concluded that she had no mental restrictions.  (Id. at 187-89,

24  233.)

25  **C.**   **Nonexamining Physicians**

26      On August 8, 2005, George G. Spellman, M.D., completed a

27  Residual Functional Capacity form and concluded that Plaintiff

28  could occasionally lift and/or carry twenty pounds, frequently lift

and/or carry ten pounds, stand and/or walk up to six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (<u>Id.</u> at 237-44.)  He also found that she could never climb a ladder, ropes or scaffolds, and only occasionally perform balancing, stooping, kneeling, crouching or crawling activities, and Harrington should avoid workplace hazards and concentrated exposure to extreme cold or heat, and to wetness or humidity.  (<u>Id.</u> at 239, 241.)  His findings were affirmed by Dr. Thu N. Do on October 18, 2005.  (<u>Id.</u> at 244.)

On August 8, 2005, Emanuel H. Rosen, M.D., completed a Psychiatric Review Technique form.  (<u>Id.</u> at 217-34).  He considered Dr. Carroll's psychiatric evaluation and agreed that Plaintiff did not have a severe mental impairment.  (<u>Id.</u>)  Dr. Rosen's findings were also affirmed.  (<u>Id.</u> at 217, 219.)

**III.   THE ADMINISTRATIVE HEARING**

**A.   The Plaintiff's Testimony**

Harrington testified at a hearing before Judge Parker on October 3, 2006.  (<u>Id.</u> at 318-28.)  She explained that she stopped working in May 2004 because she had arthritis, experienced low back, leg, and knee pain, and her blood pressure was high.  (<u>Id.</u> at 321.)  Christine Anderson, a physician's assistant, saw her and told her to stop working.  (<u>Id.</u> at 321, 325.)  She claimed to have seen a doctor at the clinic in which Anderson worked but could not recall the doctor's name.  (<u>Id.</u> at 325.)

Plaintiff explained that her symptoms included "constant pain" in her knees, legs, hands, shoulders, and lower back which, on a scale of one to ten, she estimated to be an eight without medication and a seven with medication.  (<u>Id.</u> at 322-23.)  She also

8

claimed to have high blood pressure, difficulty sleeping, shortness of breath, and acid reflux. (Id. at 322.) "Sitting too long, walking, bending, stooping, [and] lifting[]" caused her pain. (Id. at 322-23.) Harrington said that she experienced side effects from her medication that include feeling dizzy, light-headed, tired and weak. (Id. at 325.)

Plaintiff described her typical day as getting up and making her bed, washing the morning dishes while standing for about ten minutes, folding clothes, fixing her meals, taking two to three brief naps, spending a majority of her time lying down, and watching four or five hours of television. (Id. at 323-25.) She also drives about three times a week to run errands. (Id. at 325.)

Harrington estimated that she could stand about two hours, walk about an hour, and sit about forty minutes in an eight-hour workday. (Id. at 325-26.) She explained that based on the types of activities she performs at home, she could lift and carry ten pounds frequently for two to six hours in an eight-hour workday. (Id. at 326.) Plaintiff believes she could bend twice in an eight-hour workday, but it would cause her pain; she does not crouch or crawl, and she avoids stairs. (Id. at 327.)

**B.   The Medical Expert's Testimony**

Sheldon Steiner, M.D., testified at the hearing as a medical expert. (Id. at 328-33.) He concluded that Harrington did not meet any listing alone or in combination. (Id. at 329.) The doctor explained that even though Harrington had some chest pain, she had a negative cardiac evaluation, reached 7.7 METs on the treadmill, and achieved eighty-six percent of the maximum heart rate. (Id. at 329.) Additionally, the treadmill was on an uphill

9

1  slope, and 7.7 METS is "pretty fast," so "her knee couldn't have

2  been hurting that much[.]"  (<u>Id.</u> at 329.)

3      Dr. Steiner explained that Plaintiff showed no abnormalities

4  in her echocardiogram; she had hypertension in 2002, but it was

5  under control with no organ damage; her weight had dropped from 290

6  to 264, so she was able to loose weight; she exercised three times

7  a week for twenty minutes; her diabetes is under control with no

8  organ damage; and she has arthritis but was not on narcotic

9  medication.  (<u>Id.</u> at 328-33.)  He acknowledged that Dr. Raisinghani

10 diagnosed Plaintiff with crepitus bilaterally, but Dr. Steiner

11 found that Harrington did not require an assistive device to walk,

12 and she walked twenty minutes three times a week, which is a "fair

13 amount" of walking.  (<u>Id.</u> at 333.)  He also commented that she did

14 not require narcotic pain medication even though she exercised

15 often.  "[Y]ou can't sleep most of the day and lose 30 pounds in 6

16 months."  (<u>Id.</u> at 332.)  Dr. Steiner opined that Harrington could

17 perform light work.  (<u>Id.</u> at 333.)

18 **C.    <u>The Vocational Expert's Testimony</u>**

19     Nelly Katsell testified as a vocational expert.  (<u>Id.</u> at 333-

20 35.)  She classified the Plaintiff's relevant work experience

21 during the past fifteen years, including skill and exertional level

22 as follows:  "Nurse assistant DOT [Dictionary at Occupational

23 Titles] 355.674-014, SVP four, semiskilled, exertional level

24 medium.  Cook/school cafeteria, DOT 313.381-030, SVP six, skilled,

25 exertional level medium.  Cook/fast food, DOT 313.374-010, SVP

26 five, skilled, exertional level medium."  (<u>Id.</u> at 333-34.)  But

27 none of Plaintiff's skills were transferable.  (<u>Id.</u> at 334.)

28

When presented with a hypothetical using the claimant's testimony, Katsell stated Plaintiff would not be able to return to either her past work or any other work.  (Id.)  The vocational expert was given another hypothetical of a person who was three months younger than fifty years old, had a high school equivalency degree, could lift and/or carry twenty pounds occasionally, lift and/or carry ten pounds frequently, stand and/or walk up to six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and bend or crouch only occasionally; Katsell explained that the person was below Plaintiff's past work level, but there were unskilled jobs that person could perform.  (Id. at 334-35.) The unskilled jobs in the local and national economies included "Counter clerk-photo finish, DOT 249.366-010, San Diego 1,600, [United States] 140,000.  Cashier-self service gasoline, DOT 211.462-010, San Diego area 17,000, [United States] 1,700,000. Office helper, DOT 239.687-010, San Diego 3,500, [United States] 170,000."  (Id. at 335.)

## IV.   THE ALJ'S DECISION

After considering the record, ALJ Parker made the following findings:

> 1.    The claimant meets the insured status requirement of
>       the Social Security Act through December 31, 2009.
>
> 2.    The claimant has not engaged in substantial gainful
>       activity since May 19, 2004, the alleged onset date.
>
> 3.    The claimant has the following severe impairments:
>       diabetes mellitus, obesity, knee impairment and
>       depression.
>
>       . . . .
>
> 4.    The claimant does not have an impairment or
>       combination of impairments that meets or medically

1        equals one of the listed impairments in 20 CFR Part
         404, Subpart P, Appendix 1.
2
         . . . .
3

4   5.   After careful consideration of the entire record,
         the [ALJ] finds that the claimant has the residual
5        functional capacity to lift and carry 20 pounds
         occasionally and 10 pounds frequently.  She can sit,
6        stand and walk for 6 hours, each, in an 8 hour
         workday.  She should never climb ladders, ropes or
7        scaffolds and can occasionally climb stairs, bend,
         kneel, crouch and crawl.  She should avoid
8        concentrated exposure to extreme heat, cold, wet,
         humidity and work place hazards.  The claimant can
9        understand detailed but uncomplicated instructions
         and simple, one/two step instructions, can maintain
10       concentration and attention for simple repetitive
         work, can relate and interact with the public,
11       supervisors, and co-workers, and can tolerate low
         and moderate to high stress work.
12
         . . . .
13

14  6.   The Claimant is unable to perform any past relevant
         work.
15
         . . . .
16

17  7.   The claimant was born on January 5, 1957 and was 47
         years old when the alleged disability onset, which
18       is defined as a younger individual age 45-49.  The
         claimant will turn 50 years of age on January 5,
19       2007, and will be an individual closely approaching
         advanced age.  Her 50th birthday is within 6 months
20       of the date of this decision.

21  8.   The claimant has at least a high school education
         and is able to communicate in English.
22
    9.   Transferability of job skills is not an issue in
23       this case because claimant's past relevant work is
         unskilled.
24
    10.  Considering the claimant's age, education, work
25       experience, and residual functional capacity, there
         are jobs that exist in significant numbers in the
26       national economy that claimant can perform.

27       . . . .

28  ///

12

07cv1330 JM (RBB)

1   11.   The claimant has not been under a "disability" as
2         defined in the Social Security Act, from May 19,
          2004 through the date of this decision.
3   (Id. at 18-22 (citations omitted)).

4       Based on all of the above, Judge Parker concluded that
5   Harrington is not entitled to a period of disability, or disability
6   insurance benefits or supplemental security income.  (Id. at 22-
7   23.)

8                    V.   STANDARD OF REVIEW
9       To qualify for disability benefits under the Social Security
10  Act, an applicant must show two things:  (1) He or she suffers from
11  a medically determinable impairment that can be expected to last
12  for a continuous period of twelve months or more or result in
13  death; and (2) the impairment renders the applicant incapable of
14  performing the work that he or she previously performed or any
15  other substantially gainful employment that exists in the national
16  economy.  See 42 U.S.C.A. §§ 423(d)(1)(A), (2)(A) (West 2008).  An
17  applicant must meet both requirements to be classified as
18  "disabled."  Id.

19      Sections 205(g) and 1631(c)(3) of the Social Security Act
20  allow applicants whose claims have been denied by the SSA to seek
21  judicial review of the Commissioner's final agency decision.  42
22  U.S.C.A. §§ 405(g), 1383(c)(3) (West 2008).  The Court should
23  affirm the decision unless "it is based upon legal error or is not
24  supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d
25  1211, 1214 n.1 (9th Cir. 2005) (citing Tidwell v. Apfel, 161 F.3d
26  599, 601 (9th Cir. 1999)).

27      "Substantial evidence is such relevant evidence as a
28  reasonable mind might accept as adequate to support [the ALJ's]

                            13                    07cv1330 JM (RBB)

1   conclusion[,]" considering the record as a whole.  <u>Webb v.</u>

2   <u>Barnhart</u>, 433 F.3d 683, 686 (9th Cir. 2005) (citing <u>Richardson v.</u>

3   <u>Perales</u>, 402 U.S. 389, 401 (1971)).  It means "'more than a mere

4   scintilla but less than a preponderance[]'" of the evidence.

5   <u>Bayliss</u>, 427 F.3d at 1214 n.1 (quoting <u>Tidwell</u>, 161 F.3d at 601).

6   "'[T]he court must consider the evidence that supports and the

7   evidence that detracts from the ALJ's conclusion . . . .'"  <u>Frost</u>

8   <u>v. Barnhart</u>, 314 F.3d 359, 366-67 (9th Cir. 2002) (quoting <u>Jones v.</u>

9   <u>Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985) (<u>citing</u> <u>Universal Camera</u>

10  <u>Corp. v. NLRB</u>, 340 U.S. 474, 487-88 (1951).

11       To determine whether a claimant is "disabled," the Social

12  Security regulations use a five-step process outlined in 20 C.F.R.

13  § 404.1520 (West 2008).  If an applicant is found to be "disabled"

14  or "not disabled" at any step, there is no need to proceed further.

15  <u>Ukolov v. Barnhart</u>, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting

16  <u>Schneider v. Comm'r of Soc. Sec. Admin.</u>, 223 F.3d 968, 974 (9th

17  Cir. 2000)).  Although the ALJ must assist the applicant in

18  developing a record, the applicant bears the burden of proof during

19  the first four steps.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 & n.3

20  (9th Cir. 1999).  If the fifth step is reached, however, the burden

21  shifts to the Commissioner.  <u>Id.</u> at 1098.  The steps for evaluating

22  a claim are as follows:

23       **Step 1.**  Is the claimant presently working in a
         substantially gainful activity?  If so, then the claimant
24       is "<u>not</u> <u>disabled</u>" within the meaning of the Social
         Security Act and is not entitled to disability insurance
25       benefits.  If the claimant is not working in a
         substantially gainful activity, then the claimant's case
26       cannot be resolved at step one and the evaluation
         proceeds to step two.

27
         **Step 2.**  Is the claimant's impairment severe?  If
28       not, then the claimant is "<u>not</u> <u>disabled</u>" and is not
         entitled to disability insurance benefits.  If the

                                   14                      07cv1330 JM (RBB)

claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.

    **Step 3.** Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "underlined disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.

    **Step 4.** Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.

    **Step 5.** Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits.

Id. at 1098-99 (footnotes and citations omitted); see also

Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001) (giving

an abbreviated version of the five steps).

    Section 405(g) permits this Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C.A. § 405(g)(West 2008). The matter may also be remanded to the Social Security Administration for further proceedings. Id.

    "If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute

15

1  its judgment for that of the Secretary." <u>Flaten v. Sec'y Health &</u>

2  <u>Human Servs.,</u> 44 F.3d 1453, 1457 (9th Cir. 1995).  The Court must

3  uphold the denial of benefits if the evidence is susceptible to

4  more than one rational interpretation, one of which supports the

5  ALJ's decision.  <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir.

6  2005).

7                            **VI.  DISCUSSION**

8       Plaintiff complains that ALJ Parker erred by (1) relying on

9  the vocational expert, whose testimony was inconsistent with the

10 Dictionary of Occupational Titles; (2) mischaracterizing the

11 vocational expert's testimony; (3) relying on legally insufficient

12 reasons to discredit Plaintiff's allegations of disabling pain; (4)

13 failing to consider the side effects from Plaintiff's medications;

14 (5) rejecting the opinion of Plaintiff's treating provider without

15 appropriate findings; and (6) ignoring evidence from Harrington's

16 treating physician that she has a severe physical impairment which

17 significantly affected her ability to perform work activities.

18 (Pl.'s Mem. P. & A. 3, 10, 12, 20, 21, 23.)  In his Cross-Motion

19 for Summary Judgment, Defendant asserts that the Commissioner's

20 decision should not be disturbed because it was supported by

21 substantial evidence and based on proper legal grounds.  (Def.'s

22 Mem. P. & A. 6.)

23 **A.   Whether the ALJ Erred in Relying on the Testimony of the**

24 **Vocational Expert**

25      Harrington argues that the ALJ's decision limited her residual

26 functional capacity ("RFC") to simple repetitive tasks, which

27 corresponds to reasoning level one, but the three jobs cited by the

28 ALJ require reasoning at levels two and three, exceeding her RFC.

1   (Pl.'s Mem. P. & A. 4-6.)  Plaintiff concludes that the ALJ's

2   failure to evaluate the conflict between her level one RFC and the

3   level two and level three jobs cited by the vocational expert

4   requires the Court to reverse.  (Id. at 6.)

5       Defendant argues that a reversal is not required because the

6   vocational expert "specifically indicated that the jobs that he

7   [sic] identified were 'unskilled,' which was consistent with

8   Plaintiff's mental limitations and consistent with the DOT."

9   (Def.'s Mem. P. & A. 9-10 (citation omitted).)   The Commissioner

10  contends that "several courts have found level two reasoning to be

11  consistent with the ability to do simple, routine and/or repetitive

12  work tasks."  (Id. at 11.)

13      One measure of unskilled work is the specific vocational

14  preparation ("SVP") level of a DOT listing, which addresses the

15  time it takes a typical worker to learn the job.  Riggs v. Astrue,

16  No. C07-5242RJB-KLS, 2008 WL 1927337, at *10 (W.D. Wash. Apr. 25,

17  2008).  A job's General Education Development ("GED") reasoning

18  level "by contrast, gauges the minimal ability a worker needs to

19  complete the job's tasks themselves."  Meissl v. Barnhart, 403 F.

20  Supp. 2d 981, 983 (C.D. Cal. 2005).  Plaintiff argues that the GED

21  reasoning levels attributable to the three DOT listings the

22  vocation expert recommended (levels two and three) were

23  inconsistent with the ALJ's residual functional capacity finding,

24  and this unresolved conflict created reversible error.

25      Harrington argues that the ALJ's finding that she can only

26  perform "simple repetitive work" means that she is limited to jobs

27  with a level one GED rating.  (Pl.'s Mem. P. & A. 6.)  A job's SVP

28  is distinct from its GED rating.  Riggs v. Astrue, No. C07-5242

17

1  RJB-KLS, 2008 WL 1927337, at *19-20.  The specific vocational

2  preparation score "specifies the vocational preparation required to

3  perform a job."  Id. at *20 (quoting Cooper v. Barnhardt, 2004 WL

4  2381515, at *4 (N.D. Okla. Oct. 15, 2004).  "'The reasoning level .

5  . . appears more similar to whether or not a claimant has a

6  limitation to performing only simple tasks.'"  Id.  Thus, the Court

7  will only address the GED reasoning levels.

8      1.   **The Residual Functional Capacity Designation of Plaintiff**

9           **at Level Two**

10     The positions of counter clerk (DOT No. 249.366-010) and

11 office helper (formerly DOT No. 239.687-010, currently DOT No.

12 239.567-010) require reasoning at level two, which means the worker

13 must "[a]pply commonsense understanding to carry out detailed but

14 uninvolved written or oral instructions[] and [d]eal with problems

15 involving a few concrete variables in or from standardized

16 situations."  1 U.S. DEPT. OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES Nos.

17 239.567-010, 249.366-010, at 210, 217 (4th ed., rev. 1991).  The

18 cashier position, (DOT No. 211.462-010) requires reasoning at level

19 three; this employee must "[a]pply commonsense understanding to

20 carry out instructions furnished in written, oral, or diagrammatic

21 form[] [and] [d]eal with problems involving several concrete

22 variables in or from standardized situations."  DOT, supra, No.

23 211.462-010, at 183.  Reasoning at GED level one is defined as

24 "[a]pply commonsense understanding to carry out simple one- or

25 two-step instructions[] [and] [d]eal with standardized situations

26 with occasional or no variables in or from these situations

27 encountered on the job."  DOT, supra, No. 230.687-010, at 205.

28

1    The ALJ found that Harrington has the following residual

2  functional capacity:

> The claimant can understand detailed
> but uncomplicated instructions and
> simple, one/two step instructions, can
> maintain concentration and attention
> for simple, repetitive work, can relate
> and interact with the public,
> supervisors, and co-workers, and can
> tolerate low and moderate to high
> stress work.

8  (Admin. R. 19.)

9    Judge Parker did not limit Plaintiff to only having the

10 ability to apply "commonsense understanding to carry out simple

11 one- or two-step instructions" or only "deal with standardized

12 situations with occasional or no variables," which is the essence

13 of reasoning level one.   DOT, supra, No. 230.687-010 at 205.

14 Rather, he found that Plaintiff can understand "detailed but

15 uncomplicated instructions" and perform "simple, repetitive work."

16 (Admin. R. 19.)  The residual functional capacity finding clearly

17 puts Plaintiff beyond reasoning at level one.  But it does not go

18 so far as to encompass reasoning at level three, which includes

19 the ability to follow instructions "furnished in written, oral, or

20 diagrammatic form" and "[d]eal with problems involving several

21 concrete variables."  DOT, supra, No. 211.462-010 at 183.  The ALJ

22 determined that Plaintiff could perform jobs that exceed reasoning

23 level one.

24    Additionally, even if Judge Parker had limited Plaintiff to

25 only simple, routine or repetitive work, courts have found that

26 consistent with reasoning at level two rather than at reasoning

27 level one, which is the lowest level of reasoning available.  See

28 Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005)

1  (explaining that the RFC which included simple and routine work
2  tasks appeared to be consistent with level-two reasoning); <u>Meissl</u>,
3  403 F. Supp. 2d at 983-85 (finding limitation to simple and
4  repetitive tasks closer to level-two reasoning than level one);
5  <u>Riggs</u>, 2008 WL 1927337, at *18 (finding level-two reasoning
6  because the ALJ did not mean to assign plaintiff to the lowest
7  level of the reasoning development scale).

8      But some courts take the position that reasoning level one is
9  more appropriate.  <u>See</u> <u>Lucy v. Chater</u>, 113 F.3d 905, 909 (8th Cir.
10  1997) (requiring testimony from vocational expert to determine
11  whether claimant limited to following only simple instructions can
12  engage in unskilled sedentary work when many jobs in that category
13  require reasoning at level two or higher); <u>Allen v. Barnhart</u>, No.
14  C-02-3315 EDL, 2003 WL 22159050, at *10 (N.D. Cal. Aug. 28, 2003)
15  (finding that jobs with GED reasoning level of two, which
16  presupposes ability to follow detailed and involved instructions,
17  are not available for a worker who is limited to jobs with a
18  specific vocational preparedness of level one — simple, routine
19  tasks).

20      In this case, although the ALJ found that Plaintiff can
21  perform  "simple, repetitive work," he also found that she was
22  able to "understand detailed but uncomplicated instructions, and
23  simple one/two step instructions." (Admin. R. 19.)  The ALJ did
24  not intend to relegate Plaintiff to the lowest rung on the
25  reasoning ladder; thus, he found her able to perform work
26  exceeding reasoning at level one, which is supported by
27  substantial evidence in the record.

28

1     This Court agrees with the analysis in <u>Riggs v. Astrue</u>, No.

2  C07-5242RJB-KLS, 2008 WL 1929337, at *21.  "There is no

3  inconsistency between the [two] jobs identified by the vocational

4  expert and adopted by the ALJ requiring level 2 reasoning and the

5  limitation to simple instructions and decisions."  <u>Id.</u>  Judge

6  Parker did not err by relying on the testimony of the vocational

7  expert.

8     **2.     <u>Whether the ALJ's Failure to Ask the Vocational Expert</u>**

9         **<u>if Her Testimony Conflicted With the Dictionary of</u>**

10         **<u>Occupational Titles Created Reversible Error</u>**

11     Social Security Ruling 00-4p provides:

12         [B]efore relying on VE or VS evidence to
         support a disability determination or
13         decision, our adjudicators must: Identify and
         obtain a reasonable explanation for any
14         conflicts between occupational evidence
         provided by VEs or VSs and information in the
15         Dictionary of Occupational Titles (DOT) . . .
         and Explain in the determination or decision
16         how any conflict that has been identified was
         resolved.

17

18  Soc. Sec. Ruling 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000).

19  The Ninth Circuit interpreted this ruling in <u>Massachi v. Astrue</u>,

20  486 F.3d 1149 (9th Cir. 2007), and described the responsibilities

21  at the ALJ as follows:

22         For the first time, we address the
         question whether, in light of the
23         requirements of SSR 00-4p, the ALJ may rely
         on a vocational expert's testimony regarding
24         the requirements of a particular job without
         first inquiring whether the testimony
25         conflicts with the Dictionary of Occupational
         Titles.  We hold that an ALJ may not.

26

27  <u>Id.</u> at 1152.

28  ///

                          21

1    Where there is an apparent conflict between the VE's

2 testimony and the Dictionary of Occupational Titles, "at a

3 minimum" the ALJ must "inquire through a vocational expert into

4 the possible inconsistency." Clarendon v. Astrue, No. ED CV

5 07-1520-E, 2008 WL 2561894, at *2 (C.D. Cal. June 26, 2008)

6 (remanding where ALJ improperly relied on the Medical-Vocational

7 Guidelines with no vocational expert testimony); Burns v.

8 Barnhart, 312 F.3d 113, 127 (3rd Cir. 2002) (finding that Social

9 Security Ruling 00-4p requires the ALJ to ask the vocational

10 expert whether any possible conflicts exist between the

11 vocational expert's testimony and the DOT).  The ALJ must then

12 "explain in his decision how the conflict was resolved." Burns,

13 312 F.3d at 127; see also Light v. Soc. Sec. Admin., 119 F.3d

14 789, 793-94 (9th Cir. 1997) (finding that an explanation and

15 persuasive supporting evidence must accompany any administrative

16 deviation from the DOT).

17    Here, the ALJ never asked the vocational expert, Nelly

18 Katsell, if her testimony conflicted with the DOT.  (Admin. R.

19 333-36.)  Instead, Katsell simply identified two reasoning level

20 two jobs that Plaintiff could hold:  "Counter clerk-photo finish,

21 DOT 249.366-010, San Diego 1,600, [United States] 140,000 . . . .

22 [and] Office helper, 239.687-010, regional San Diego 3,500,

23 [United States] 170,000."  (Id. at 335.)

24    Judge Parker found that Harrington could not perform her

25 past relevant work.  (Id. at 21.)  The finding that she could

26 perform other jobs that exist in the national economy was based

27 on the two and one-half pages of testimony given by the

28

1  vocational expert.  (Id. at 333-35).  The result in this case is

2  dictated by the conclusion in Massachi.

>           [T]he ALJ did not ask the vocational expert
>           whether her testimony conflicted with the
>           Dictionary of Occupational Titles and, if so,
>           whether there was a reasonable explanation
>           for the conflict.  Thus, we cannot determine
>           whether the ALJ properly relied on her
>           testimony.  As a result, we cannot determine
>           whether substantial evidence supports the
>           ALJ's step-five finding that Wassachi could
>           perform other work.  Accordingly, we instruct
>           the district court to remand this case so
>           that the ALJ can perform the appropriate
>           inquiries under SSR 00-4p.

10  Massachi v. Astrue, 486 F.3d at 1153-54 (footnotes omitted).  ALJ

11  Parker's step-five analysis suffers from the same defect.

12  **B.   Whether the ALJ's Hypothetical Mischaracterized the**

13       **Testimony of the Vocational Expert**

14       Plaintiff argues that "the final RFC of the ALJ's decision

15  did not correspond to the hypothetical question posed to the

16  vocational expert at the hearing."  (Pl.'s Mem. P. & A. 10.)

17  Harrington contends that the "hypothetical RFC question was

18  missing at least fourteen limitations which were contained in the

19  final RFC . . . . (Id. at 11 (citation omitted).)  Therefore, the

20  ALJ's findings were not supported by substantial evidence in the

21  record.  Plaintiff also argues that the ALJ failed to include

22  mental limitations in his hypothetical question to the vocational

23  expert which "renders the subsequent testimony of the vocational

24  expert void of evidentiary value."  (Id. at 12.)

25       In support of his Cross-Motion for Summary Judgment,

26  Defendant argues that "[t]o the extent that Plaintiff . . .

27  complains of the ALJ's failure to include all environmental

28  and/or postural limitations, there was no error because VE

testimony was not necessary as such limitations do not erode the light work occupational base." (Def.'s Mem. P. & A. 10.) Additionally, "[b]ecause the ALJ's mental RFC finding was consistent with unskilled work, there is no basis for a remand based on an incomplete hypothetical question." (Id.) Defendant concludes that reversal or remand is not required because any omission of these limitations from the hypothetical questions posed to the vocational expert is harmless error. (Id.)

The claimant bears the burden of establishing her disability and the medical severity of physical and mental impairments which prevent her from engaging in substantial gainful activity. Tackett, 180 F.3d at 1098; 20 C.F.R. §§ 404.1520(b-f), 416.920(b-f) (West 2008). At step five of the disability analysis, the burden shifts to the Commissioner to show that the claimant can perform other gainful work that exists in substantial numbers in the economy. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998).

If the ALJ's decision is supported by substantial evidence and properly applied law, it will not be reversed for harmless error. See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1990). The ALJ may rely on the testimony of the VE to make "specific findings showing that the claimant has the physical and mental capacity to perform specified jobs, taking into consideration the requirements of the job as well as the claimant's age, education, and background." Hall v. Sec'y of Health, Educa. & Welfare, 602 F.2d 1372, 1377 (9th Cir. 1979).

Hypotheticals posed to the vocational expert must include "'all of the claimant's functional limitations, both physical and

24

1   mental' supported by the record." <u>Thomas v. Barnhart</u>, 278 F.3d

2   947, 956 (9th Cir. 2002) (quoting <u>Flores v. Shalala</u>, 49 F.3d 562,

3   570-71 (9th Cir. 1995); <u>accord</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035,

4   1043 (9th Cir. 1995).  Where an incomplete hypothetical is posed,

5   the vocational expert's opinion that the claimant can perform

6   jobs in the national economy is not supported by competent

7   evidence.  <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1466 n.3 (9th Cir.

8   1996); <u>see also</u> <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 850 (9th Cir.

9   1991).

10      The ALJ may properly limit questioning of the vocational

11   expert to only physical impairments, if there are no mental

12   impairments supported by substantial evidence in the record.

13   <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1165 (9th Cir.2001); <u>see also</u>

14   <u>Bayliss</u>, 427 F.3d at 1217.  "[A]n ALJ may accept or reject

15   alleged restrictions in a hypothetical question that are not

16   supported by substantial evidence." <u>McHugh v. Astrue</u>, No. C

17   06-3616 JL, 2008 WL 3876475, at *5 (N.D. Cal. Aug. 18, 2008)

18   (citing <u>Osenbrock</u>, 240 F.3d at 1164-65); <u>accord</u> <u>Bradford v.</u>

19   <u>Astrue</u>, No. EDCV 07-1022-JTL, 2008 WL 2523833, at *7 (C.D. Cal.

20   June 20, 2008).

21      **1.**   <u>**Functional Limitations**</u>

22      Plaintiff argues that because the ALJ found more functional

23   limitations than those posed in his questions to the VE, the

24   hypotheticals were incomplete and had no evidentiary value.

25   (Pl.'s Mem. P. & A. 10-11).  Judge Parker found that Harrington's

26   functional limitations were as follows:

27         [T]he claimant has the residual capacity to
           lift and carry 20 pounds occasionally and 10

28         pounds frequently.  She can sit, stand and
           walk for 6 hours, each, in an 8 hour workday.

> She should never climb ladders, ropes or
> scaffolds and can occasionally climb stairs,
> bend, kneel, crouch and crawl.  She should
> avoid concentrated exposure to extreme heat,
> cold, wet, humidity and work place hazards.

(Admin. R. 19.)  But during the hearing, the ALJ posed the

following hypothetical:

> [H]ypothetical person one would be closing
> [sic] approaching advanced age as the
> claimant will be within 3 months or less
> 50, and also GED, high school equivalency
> degree, and using Dr. [Raisinghani's] and
> Dr. Steiner's testimony, that is 20 pounds
> occasionally, 10 pounds frequently, stand
> or walk up to 6 out of 8 hours a day, sit
> for 6 out of 8, bending and crouch [sic]
> only occasionally.
>
> . . . .
>
> . . . Are there jobs available that the
> hypothetical person could perform with
> those limitations?

(Id. at 334-35.)

     Judge Parker found that Plaintiff should "never climb

ladders, ropes or scaffolds" and occasionally climb stairs,

kneel, and crawl, and she "should avoid concentrated exposure

to extreme heat, cold, wet, humidity and work place hazards."

(Id. at 19.)  These additional limitations do not change her

ability to perform unskilled light work activity.  See Soc.

Sec. Ruling 83-14, 1983 WL 31254, at * 5 (1983) ([T]here are

nonexertional limitations or restrictions which have very

little or no effect on the unskilled light occupational base.

Examples are inability to ascend or descend scaffolding, poles,

and ropes; inability to crawl on hands and knees . . . .

Environmental restrictions . . . would also not significantly

affect the potential unskilled light occupational base."); see

<u>also</u> Soc. Sec. Ruling 85-15, 1985 WL 56857, at * 7 (1985) ("If a person can stoop occasionally[,] . . . the sedentary and light occupational base is virtually intact."). The failure to include these additional functional limitations, which have a negligible effect on a person's ability to perform unskilled light work, is harmless error.

### 2. Mental Limitations

Plaintiff argues that because the ALJ found mental limitations that were not included in the hypothetical to the VE, the hypothetical was incomplete and lacked evidentiary value. (Pl.'s Mem. P. & A. 12.) The ALJ found that Harrington had minimal mental limitations.

> The claimant can understand detailed but uncomplicated instructions and simple, one/two step instructions, can maintain concentration and attention for simple repetitive work, can relate and interact with the public, supervisors, and co-workers, and can tolerate low and moderate to high stress work.

(Admin. R. 19.) The ALJ's hypothetical did not include any of these limitations. (<u>Id.</u> at 334-35.)

Prior to the administrative hearing, Plaintiff had been treated for depression and prescribed Zoloft. (<u>Id.</u> at 171, 203-06.) She was examined by Dr. Carroll on June 30, 2005, and he concluded that Harrington had no mental restrictions. (<u>Id.</u> at 187-89.) Dr. Rosen, a nonexamining physician who completed the Psychiatric Review Technique form, noted that Plaintiff had a depressive disorder" (<u>id.</u> at 222) but agreed that she did not have a severe mental impairment. (<u>Id.</u> at 219.) Plaintiff submitted no other medical evidence of mental limitations. Additionally, at the hearing she did not discuss any mental

limitations.  (Id. at 318-28.)  Nevertheless, the ALJ found
that Harrington was suffering from depression, although it was
insufficient, alone or in combination with other severe
impairments, to meet or equal the criteria contained in the
Commissioner's listing of impairments.  (Id. at 18).

The hypothetical posed to the VE must include all of the
claimant's limitations which are supported by evidence in the
record.  See Osenbrock, 240 F.3d at 1165; accord Bayliss, 427
F.3d at 1217; Thomas, 278 F.3d at 956; Flores, 49 F.3d at
570-71.  In Osenbrock, like here, "[t]he omission of depression
from the hypothetical question is supported by substantial
evidence in the record." Osenbrock, 240 F.3d at 1165.  There
was no evidence that establishes that Harrington's depression
"presented [a] significant interference with the ability to
perform basic work-related activities." Osenbrock, 240 F.3d at
1165.  Therefore, the question to the vocational expert was
proper and is supported by substantial evidence.

**C.   Whether the ALJ Relied on Legally Insufficient Reasons to
      Discredit Plaintiff's Allegations of Disabling Pain**

Harrington contends that nine of the reasons given by the
ALJ for rejecting her excess pain testimony were legally
insufficient.  (Pl.'s Mem. P. & A. 12-19.)

In his findings, ALJ Parker explained that "the
claimant's medically determinable impairments could reasonably
be expected to produce the alleged symptoms, but . . . the
claimant's statements concerning the intensity, persistence and
limiting effects of these symptoms are not entirely credible."
(Admin. R. 19.)  The ALJ then gave the specific reasons why he

1    did not believe the Plaintiff's excess pain testimony.  (<u>Id.</u>

2    at 20.)

3         An ALJ may reject a claimant's subjective pain or symptom

4    testimony entirely if the claimant fails to produce any

5    objective medical evidence of an impairment that could

6    reasonably be expected to produce the claimed symptoms or pain.

7    <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1407 (9th Cir. 1986); <u>accord</u>

8    <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1196 (9th

9    Cir. 2004).  The severity of pain need not be proven by

10   objective medical evidence; the medical evidence must only show

11   that it "could reasonably have caused some degree of the

12   symptom." <u>Smolen v. Chater,</u> 80 F.3d 1273, 1282 (9th Cir. 1996)

13   (citing <u>Orteza v. Shalala</u>, 50 F.3d 748, 749-50 (9th Cir. 1994);

14   <u>Fair v. Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1989)).

15        The level of pain experienced from a given physical

16   impairment varies from person to person.  <u>Smolen,</u> 80 F.3d at

17   1282 (citing <u>Fair</u>, 885 F.2d at 601).  "Unless there is

18   affirmative evidence showing that the claimant is malingering,

19   the Commissioner's reasons for rejecting the claimant's

20   testimony must be 'clear and convincing.'" <u>Reddick</u>, 157 F.3d

21   at 722 (quoting <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th

22   Cir.1995); <u>Swenson v. Sullivan</u>, 876 F.2d 683, 687 (9th Cir.

23   1989)).  The ALJ must provide "specific, cogent reason[s] for

24   the disbelief" to reject a claimant's subjective complaints.

25   <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990).  There

26   must be specific findings "stat[ing] which pain testimony is

27   not credible and what evidence suggests the complaints are not

28

07cv1330 JM (RBB)

credible." <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir.

1993).   Social Security Ruling 96-7p provides as follows:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

"[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain." <u>Light</u>, 119 F.3d at 792 (citing <u>Lester v. Chater</u>, 81 F.3d at 834; <u>Cotton v. Bowen</u>, 799 F.2d at 1407 (explaining "'[e]xcess pain' is, by definition, pain that is unsupported by objective medical findings[]")); <u>see also</u> Soc. Sec. Ruling, No. 96-7p, 1996 WL 374186, at *5-6 (stating that the absence of objective medical evidence substantiating the pain testimony must be considered along with the entire record including the claimant's pain testimony in evaluating credibility).

> In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.

1  <u>Light</u>, 119 F.3d at 792.  "The ALJ can disregard a claimant's

2  self-serving statements if they are unsupported by objective

3  findings."  <u>Maounis v. Heckler</u>, 738 F.2d 1032, 1034 (9th Cir.

4  1984).

5      Questions of credibility are left to the ALJ to resolve.

6  <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982)(citing

7  <u>Waters v. Gardner</u>, 452 F.2d 855, 858 n.7 (9th Cir. 1971)).

8  Courts should not "second-guess" credibility determinations.

9  <u>Allen v. Heckler</u>, 749 F.2d 577, 580 (9th Cir. 1984).  If the

10  evidence is conflicting and could be rationally interpreted

11  more than one way, the court "must uphold the decision of the

12  ALJ."  <u>Id.</u> at 579.  Where the ALJ's credibility assessment is

13  supported by substantial evidence, it will not be disturbed

14  even where some of the reasons for discrediting a claimant's

15  testimony are properly discounted.  <u>Tonapetyan v. Halter</u>, 242

16  F.3d 1144, 1148 (9th Cir. 2001).

17      The ALJ may make credibility determinations, but he

18  "cannot insulate ultimate conclusions regarding disability

19  from review by turning them into questions of 'credibility.'"

20  <u>Jones v. Heckler</u>, 760 F.2d 993, 997 (9th Cir. 1985); <u>see also</u>

21  <u>Hammock v. Bowen</u>, 867 F.2d 1209, 1214 (9th Cir. 1989).  It is

22  improper to reject pain simply because it is "out of

23  proportion" to the objective medical findings.  <u>Estala v.</u>

24  <u>Sullivan</u>, No. CV F-88-447-ADC, 1989 WL 280269, at *3-4 (E.D.

25  Cal. Aug. 31, 1989) (finding that ALJ did not rely on

26  substantial evidence to discredit claimant and claimant's

27  doctor's testimony regarding her severe pain).  It is not

28  enough to merely list multiple factors to discredit pain

1    testimony without explaining how those factors affected the

2    claimant's credibility.  <u>Cooper v. Sullivan</u>, 880 F.2d 1152,

3    1158 n.13 (9th Cir. 1989).

4        1.    **<u>Harrington's Failure to Take Narcotic Pain</u>**

5              **<u>Medication</u>**

6        Plaintiff argues that the ALJ's first reason to discredit

7    her pain allegation, that she was not taking medication for

8    pain, was insufficient because he "failed to specify the names

9    of specific medications that he has deemed associated with

10   severe disabling pain[,] [and] . . . without additional

11   evaluation from the ALJ, it is unclear whether the combination

12   of Plaintiff's multiple medications and her gastroesophageal

13   reflux disease (GERD) prevented her from taking other pain

14   medications."  (Pl.'s Mem. P. & A. 14.)

15       Defendant maintains that the ALJ's decision was properly

16   supported by the fact that "Plaintiff was not receiving

17   treatment consistent with severe disabling pain such as

18   narcotic medication."  (Def.'s Mem. P. & A. 7 (citation

19   omitted).)  Additionally, "[h]er treating physician diagnosed

20   a number of conditions, but did not mention any work-related

21   restrictions."  (<u>Id.</u> (citations omitted).)

22       Here, the record does not support Plaintiff's contention,

23   raised for the first time in this motion, that the combination

24   of Plaintiff's multiple medications and her gastroesophageal

25   reflux disease ("GERD") prevented her from taking other pain

26   medications.  Her doctors never expressed a desire to place

27   her on narcotic pain medication or chose not to do so because

28   of complications with her medication regimen, nor was

                                32

Plaintiff ever diagnosed with GERD, but she complained of acid reflux.  (Admin. R. 170, 332.)  Harrington's pain was treated with "over-the-counter pain relievers and prescription anti-inflammatory medications."  (Id. at 171.)  "The ALJ can disregard a claimant's self-serving statements if they are unsupported by objective findings."  Maounis, 738 F.2d at 1034.  Thus, the medical record did not require Judge Parker to consider whether Plaintiff's other medications or her stomach complaints prevented her from taking pain medications.

The ALJ properly considered Plaintiff's failure to seek or receive narcotic pain medication for her allegedly disabling pain.  He may also discredit subjective pain complaints where the claimant received "minimal" and "conservative" treatment.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999).  "Another relevant factor may be 'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'"  Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) (quoting Fair v. Bowers, 885 F.2d at 603).  ALJ Parker found Plaintiff's testimony about severe disabling pain unconvincing in light of the evidence that she failed to seek or receive more than minimal and conservative pain treatment.  This reason for concluding that Plaintiff's pain testimony was not credible is supported by clear and convincing evidence.

## 2.   Dr. Raisinghani's Conclusion About Light Work

Harrington argues that Dr. Raisinghani's conclusion that Plaintiff could perform light work was not an adequate reason to reject her complaints of severe pain because "Dr.

1  Raisinghani's actual findings revealed bilateral knee

2  crepitus[,] [and] [he] also opined Plaintiff may have some

3  degenerative changes."  (Pl.'s Mem. P. & A. 15 (citations

4  omitted).)

5      Defendant counters that the ALJ properly assessed

6  Plaintiff's subjective complaints because "[h]er treating

7  physician diagnosed a number of conditions, but did not

8  mention any work-related restrictions."  (Def.'s Mem. P. & A.

9  8 (citations omitted).)

10      The ALJ acknowledged that Plaintiff had a knee

11  impairment, but he discounted the "intensity, persistence and

12  limiting effects" that Plaintiff claimed.  (Admin. R. 19.)

13  "[O]nce the claimant produces objective medical evidence of an

14  underlying impairment, an adjudicator may not reject a

15  claimant's subjective complaints based solely on a lack of

16  objective medical evidence to fully corroborate the alleged

17  severity of pain."  Bunnell, 947 F.2d at 345 (emphasis added).

18  Here, ALJ Parker reviewed the record as a whole to come to his

19  conclusions.  See generally Light, 119 F.3d at 792; Soc. Sec.

20  Ruling, No. 96-7p, 1996 WL 374186, at *5-6.  Although Dr.

21  Raisinghani diagnosed Plaintiff with bilateral knee crepitus,

22  he concluded that Harrington was able to perform light work

23  (Admin. R. 20, 192-93.)  The doctor found that Plaintiff was

24  able to perform certain physical tasks, contrary to what she

25  claimed at the hearing.  (Compare id. at 193, with id. at 325-

26  28.)  Dr. Raisinghani's conclusion, when coupled with the

27  other reasons given by Judge Parker for rejecting the

28  Plaintiff's subjective complaints of pain, was supported by

1    the record and establishes clear and convincing evidence for

2    finding Plaintiff's pain testimony was not credible.

3        **3.    Connective Tissue Disease, Overt Effusion, Swelling**

4            **or Warmth of Any Joints**

5        Plaintiff contends that the ALJ's third reason to reject

6    her complaints of pain was erroneous.  (Pl.'s Mem. P. & A. 15-

7    16.)  Judge Parker relied on Dr. Raisinghani's statement that

8    Plaintiff did not have connective tissue disease, overt

9    effusion, swelling or warmth of any joints."  (Admin. R. 20.)

10   Harrington states that "Dr. Martin Taubman, noted Plaintiff's

11   feet were warm with edema and moderate pitting." (Id. at 16.)

12   She argues that his opinion should be given more weight

13   because "Dr. Taubman's examinations were conducted from April

14   2006 to September 2006 and represent a more accurate picture

15   of Plaintiff's physical condition." (Id.)  Plaintiff does not

16   address the ALJ's "seventh" [sic] (Id. at 20) reason for

17   rejecting her excess pain allegation.  "Dr. Taubman stated

18   that the claimant has a diabetic pedal neuropathy,

19   arteriosclerotic disease of her feet and bunions on her feet.

20   However, he only prescribed wearing rooming [sic] shoes.  He

21   did not mention any work related restrictions."  (Id.

22   (citation omitted).)  The Defendant argues that this finding

23   shows that Dr. Taubman's conclusions do not undermine Dr.

24   Raisignhani's opinion.  (Def.'s Mem. P. & A. 7.)

25       Dr. Taubman's examination notes are objective medical

26   evidence of underlying symptoms; thus, ALJ Parker may not

27   reject Plaintiff's pain complaint based solely on a lack of

28   objective medical evidence to fully corroborate the alleged

severity of pain associated with her underlying ailments.
Bunnell, 947 F.2d at 345.  The ALJ considered Dr. Taubman's
examinations.  The doctor's recommendation indicates that the
pain associated with his diagnosis is not as severe or
debilitating as Plaintiff claims.  Additionally, Harrington
agrees that Dr. Raisinghani correctly stated that she was not
suffering from a connective tissue disease.  (Pl.'s Mem. P. &
A. 15.)  Dr. Taubman's examination notes, recommendation of
"roomy shoes," and his failure to specify any work-related
limitations support the decision that Plaintiff's subjective
complaints of pain were not credible.

**4.   <u>Severe Coronary Artery Disease</u>**

Harrington argues that the ALJ's fourth reason for
rejecting her complaints of pain — that she did not have
severe coronary artery disease — "failed to specify what
aspects of Plaintiff's testimony is undermined by the fact
that the ALJ did not conclude that Plaintiff's coronary artery
disease was not severe."  (Pl.'s Mem. P. & A. 16-7.)

Defendant explains that "[a]s to Plaintiff's complaints
of chest pain, it was not related to a medical condition such
as severe coronary disease, but was of unknown etiology[,]"
and "the medical evidence such as Dr. Raisinghani's opinion
showed that Plaintiff could perform light work."  (Def.'s Mem.
P. & A. 8 (citations omitted).)

At the administrative hearing, the medical expert
described his assessment of Plaintiff's medical records.
(Admin. R. 19.)

> [T]he complainant had complained of chest
> pain and was seen by Dr. Nguyen, who stated .
> . . although complainant was severely obese,
> after performing several cardiac tests,
> including an exercise treadmill test where
> claimant achieved 7.7 METS and 86% of the
> predicted maximum heart rate for her age
> without exercise induced chest pain, dyspnea,
> ST depression or arrhythmia.

(<u>Id.</u>)

The ALJ considered the inconsistencies between Plaintiff's pain testimony and cardiac tests in making his credibility determination.  <u>Light</u>, 119 F.3d at 792.  In addition, Plaintiff's performance on the treadmill test, without experiencing pain or other adverse effects, is inconsistent with a claim of excessive chest or joint pain. The ALJ's third reason for finding that Plaintiff's pain testimony was not credible is supported by clear and convincing evidence.

### E.   <u>Losing Weight, Not Using an Assistive Device to Walk, and Being Advised to Walk Three Times a Week</u>

Plaintiff challenges the ALJ's fifth through seventh reasons to discredit her pain allegation which were that she has been successful in losing weight; Plaintiff did not use an assistive device to walk; and her treating physician advised her to walk three times a week.  (Pl.'s Mem. P. & A. 17-18.)  Harrington complains that the ALJ failed to describe which corresponding testimony is not credible, and she argues that exercising three times a week is not inconsistent with her pain allegations.  <u>Id.</u>

In his Cross-Motion for Summary Judgment, the Commissioner asserts that Harrington's complaints of pain

were inconsistent with findings that "(1) she did not use an assistive device to walk even before losing some weight, and (2) her doctors advised her to walk at least 20 minutes three times a week even when she complained of pain . . . ." (Def.'s Mem. P. & A. 8.)

Harrington correctly points out that in Reddick v. Chater, 157 F.3d at 722, the Ninth Circuit wrote that "'[g]eneral findings are insufficient; rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" (Pl.'s Mem. P. & A. 17 (quoting Reddick, 157 F.3d at 722).) Judge Parker, however, did not make insufficient "general findings."

Reddick cites Lester v. Charter, 81 F. 3d at 834, and Dodrill v. Shalala, 12 F.3d at 918, as authority for requiring an identification of what testimony is not credible. Reddick, 157 F.3d at 722. In Lester, 81 F.3d at 834, "the ALJ offered her conclusion that the claimant's complaints were 'not credible' and 'exaggerated,' [but] she did not provide any specific reasons for her disbelief other than a lack of objective evidence." Likewise, in Dodrill, 12 F.3d at 918, the court gave the following reasons for discrediting the claimant:

> [The ALJ] did note that Dodrill left her last job not because of medical necessity, but to follow her husband to the State of Washington when he retired, [citation omitted], and that her general condition "appears to be the same as when she was employed," [citation omitted]. But beyond these observations, he merely repeated that there was little or nothing in the record to support Dodrill's claims . . . .

Dodrill, 12 F.3d at 918.

1      Judge Parker's reasoning is sufficiently specific.   In
2  his decision, the ALJ stated that claimant has alleged a
3  "knee impairment," but he explained that the medical expert
4  opined that Plaintiff's "knee appears to be fine as evidenced
5  by the fact that she did so well on her treadmill test. . . .
6  [H]er hypertension is under control and she has lost weight.
7  In fact, on September 30, 2006, the claimant was reported to
8  have lost 30 pounds in sixth [sic] months."  (Admin R. 19
9  (citation omitted).)  Judge Parker stated that Harrington
10  "will continue to help herself if she loses more weight."
11  (Id.)

12      With regard to her joint pain, the ALJ found no evidence
13  that her obesity had an effect on her joints, and "[a]lthough
14  she does complain about her knees, there is no objective
15  evidence that there is a problem . . . ." (Id.)  The ALJ
16  added that she worked after her knee surgery, was not taking
17  narcotic pain medication, and did not use an assistive device
18  to walk.  (Id. at 20.)

19      The determination that Plaintiff was successful in
20  losing weight and would continue to benefit from further
21  weight loss is a legitimate consideration in evaluating a
22  Plaintiff's claim of excessive pain.  In Osenbrock v. Apfel,
23  240 F.3d at 1165-66, the Ninth Circuit upheld the ALJ's
24  rejection of the claimant's allegation of pain in excess of
25  the medical findings.  Id.  The ALJ concluded that the
26  claimant's limitation of daily activities was self-imposed
27  and predicted that the claimant could improve his position if
28  motivated to do so.  Id. at 1166-67.  Plaintiff's ability to

lose weight and her ability to continue her weight loss are
clear and convincing reasons for discrediting her claim of
excessive pain.

Evidence that Harrington did not use an assistive device
to walk and that her treating physician advised her to walk
three times a week is inconsistent with a claim of disabling
pain.  The ALJ may discredit the Plaintiff's claims of
excessive pain based on inconsistencies in the evidence.  <u>See</u>
<u>Bunnell</u>, 947 F.2d at 346.  "These findings, properly
supported by the record, [are] sufficiently specific to allow
a reviewing court to conclude that the adjudicator rejected
the claimant's testimony on permissible grounds . . . ."  <u>Id.</u>
Thus, the fifth, sixth, and seventh reasons for discrediting
Harrington's excess pain allegations are clear and
convincing.

**6.**    **<u>Attending the Hearing, Participating in Her Own Behalf,</u>**
        **<u>and Taking Care of Her Personal Needs</u>**

Plaintiff contends that "[d]enial of benefits cannot be
based on the ALJ's observations [at the hearing], when the
applicant's statements to the contrary are supported by
objective evidence."  (Pl.'s Mem. P. & A. 18.)  She also
argues that discrediting her pain testimony because she did
not need assistance with her "personal needs" was erroneous
because "[t]he Social Security Act does not require that
claimant's [sic] be utterly incapacitated to be eligible for
benefits, and many home activities may not be easily
transferable to a work environment where it might be

40

impossible to rest periodically or take medication."  (Id. at
19.)

     The Defendant does not address all of the ALJ's reasons
for his credibility assessment.  Instead, he argues that the
medical and related evidence were the "main, specific, and
legitimate reasons for discrediting Plaintiff's testimony."
(Def.'s Mem. P. & A. 8.)

     The Ninth Circuit rejects "sit and squirm
jurisprudence," explaining that "[d]enial of benefits cannot
be based on the ALJ's observation of [claimant], when
[claimant]'s statements to the contrary . . . are supported
by objective evidence." Perminter v. Heckler, 765 F.2d 870,
872 (9th Cir. 1985).  But there is a difference between a
denial of benefits based on the ALJ's observations and the
consideration of those observations.  "'The inclusion of the
ALJ's personal observations does not render the decision
improper.'" Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d
595, 600 (9th Cir. 1999) (citations omitted)); accord
Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999).
Nevertheless, the ALJ's reliance on personal observations of
Plaintiff does not constitute clear and convincing evidence.

     Finally, the ALJ may consider the claimant's daily
activities and may reject excess pain allegations where the
person "is able to spend a substantial part of her day
performing household chores or other activities that are
transferable to a work setting." Smolen, 80 F.3d at 1284
n.7.  The claimant need not be "utterly incapacitated" to
obtain disability benefits.  Fair, 885 F.2d at 603.  The ALJ

may consider whether a Plaintiff's daily activities contradict her claim of excess pain.  But Judge Parker's findings do not attempt to correlate Harrington's daily activities to a particular type of job.

The ALJ may not reject Plaintiff's pain testimony based on his personal observations or because Plaintiff can take care of her personal needs without assistance, especially when those tasks are not transferable to a work setting.  The last two reasons for not crediting Plaintiff's allegations of disabling pain are not clear and convincing.

Where the ALJ's determination is otherwise supported by substantial evidence, it will not be disturbed even where some of the reasons for discrediting a claimant's testimony are properly discounted.  See Tonapetyan, 242 F.3d at 1148. Because the ALJ's other reasons for discrediting Plaintiff's complaint of excessive pain are clear and convincing, the decision to discredit Plaintiff's claim of disabling pain is supported by substantial evidence.

**D.    Whether the ALJ Properly Excluded Plaintiff's Claims of Side Effects From Her Medications**

Harrington maintains that the ALJ "has a duty to consider factors such as medication side effects and subjective symptom testimony in determining a claimant's disability." (Pl.'s Mem. P. & A. 20.)  She states that the record "repeatedly outline[s] her complaints to her treating physicians of side effects from medication including tiredness, diarrhea, drowsiness, fainting, lightheadedness, and stomach aches." (Id. at 20 (citation omitted).)

1    Plaintiff testified that she suffered from side effects from

2    medication, including "dizziness and tiredness/sleepiness."

3    (Id. (citation omitted).)  Harrington argues that the ALJ

4    failed to analyze medication side effects and did not include

5    side effect symptoms in the hypothetical he posed to the

6    vocational expert.  (Id. at 20-21.)

7        According to the Defendant, "Plaintiff mischaracterizes

8    the record when alleging that the ALJ did not take into

9    account of [sic] her side effects from medication.  The

10    record is devoid of any references to side effects:  the only

11    notations in the record [are] that Plaintiff complained of

12    various problems of unknown etiology and that her medications

13    were simply refilled." (Def.'s Mem. P. & A. 8.)

14        The ALJ must consider as a whole all factors that have a

15    "significant impact on an individual's ability to work,"

16    which may include medication side effects and subjective

17    evidence of pain.  Erickson v. Shalala, 9 F.3d 813, 817 (9th

18    Cir. 1993) (citing Varney v. Sec'y of Health & Human Servs.,

19    846 F.2d 581, 585 (9th Cir. 1988)(discussing step five of the

20    disability analysis).  The failure to consider side effects

21    of medication is not error where the side effects are not

22    supported by the record.  See Bayliss, 427 F.3d at 1217

23    (noting "there was record support that did not depend on

24    Bayliss's subjective complaints[]"); accord Thomas, 278 F.3d

25    at 960 (finding that ALJ properly excluded claimant's alleged

26    side effects in hypothetical where "the only evidence

27    regarding these symptoms is [claimant's] own statements to

28    her doctor and her testimony at the hearing[]").

07cv1330 JM (RBB)

1    Here, there was no objective evidence of medication side

2    effects.  Plaintiff made some statements to the doctors

3    explaining symptoms, most often dizziness while lying down,

4    and testified that she experienced dizziness and tiredness.

5    (Admin. R. 144, 147, 183, 201, 203, 211, 256, 275, 278, 280,

6    324-25).  When Harrington's attorney asked if she had any

7    side effects from medications, Plaintiff responded, "Dizzy.

8    I'm dizzy.  Dizzy and light headed, and tiredness.  I'm tired

9    and weak all the time."  (<u>Id.</u> at 325.)  Yet, when examined by

10   Dr. Nguyen on August 6, 2005, Plaintiff reported, "No known

11   drug adverse reaction."  (<u>Id.</u> at 211.)  Furthermore, her

12   doctors never attributed her dizziness, or other complaints,

13   to side effects of medication, nor did they alter her

14   medication as a result of Plaintiff's complaints.

15   Where the only evidence of medication side effects is

16   Plaintiff's testimony, the ALJ may properly exclude that

17   evidence.  <u>Thomas</u>, 278 F.3d at 960.  The ALJ's decision is

18   supported by substantial evidence despite his failure to

19   address the side effects of medication.

20   **E.   <u>Whether the ALJ Rejected the Opinion of Plaintiff's</u>**

21   **<u>Treatment Provider Without Making Appropriate Findings</u>**

22   Plaintiff argues that Judge Parker improperly rejected

23   the opinion of her treatment provider, physician assistant

24   Christina M. Anderson, dated May 19, 2004, which stated that

25   full time employment would be "impractical" at that time.

26   (Pl.'s Mem. P. & A. 21-22.)  Harrington challenges the three

27   reasons the ALJ set forth to justify his rejection of

28   Anderson's opinion.  (<u>Id.</u> at 22-23.)

44

Defendant argues, "The ALJ properly relied on the State Agency physicians' opinions, which were consistent with the overall record." (Def.'s Mem. P. & A. 6 (citation omitted).) Additionally, "none of Plaintiff's doctors found limitations in excess of the RFC finding, and the medical assistant's opinion was not reliable. . . . [Her] broad statement failed [sic] short from setting specific limitations and was an opinion on the ultimate issue of disability, which is reserved to the Commissioner." (Id. at 6-7 (citation omitted) (footnote omitted).) The Commissioner adds that "the letter [by PA-C Anderson] appeared to have been written to accommodate Plaintiff's need to secure medical insurance." (Id. at 7 n.6.) And finally, because the opinion was that of a physician's assistant, it does not qualify as medical source opinion and is therefore not entitled to special significance. (Id. at 6 n.4.)

Claimants may prove their disability with medical opinions which are defined as "statements from physicians and psychologists or other acceptable medical sources." 20 C.F.R. §§ 404.1527(a), 416.927(a) (West 2008). "Social Security separates information sources into two main groups: acceptable medical sources and other sources. It then divides other sources into two groups: medical sources and non-medical sources." Sloan v. Astrue, 499 F.3d 883, 888 (8th Cir. 2007) (citing 20 C.F.R. §§ 404.1502, 416.902 (2007)). A physician assistant is in the "other sources" group but is a "medical source" in that group. Id. (citing 20 C.F.R. §§ 404.1513(d), 416.913(d) (2007)). Still,

1    "[i]nformation from these 'other sources' cannot establish

2    the existence of a medically determinable impairment.

3    Instead, there must be evidence from an 'acceptable medical

4    source' for this purpose."  Soc. Sec. Ruling 06-03p, 2006 WL

5    2329939, at *2 (Aug. 9. 2006).  A physician's assistant is

6    not an acceptable medical source, but the ALJ is allowed to

7    consider evidence from a physician's assistant to determine

8    "the severity of [claimant's] impairment(s) and how it

9    affects [claimant's] ability to work."  20 C.F.R. §§

10   404.1513(a), (d), 416.913(a), (d) (West 2008).

11       Cases that have examined this issue have determined that

12   although physician assistants are not "acceptable medical

13   sources," their opinions should be evaluated on "key issues

14   such as impairment severity and functional effects . . . ."

15   Sloan v. Astrue, 499 F.3d at 888-89; accord Bowman v. Astrue,

16   511 F.3d 1270, 1274-75 (10th Cir. 2008); Tourney v. Astrue,

17   No. ED CV 07-609-SH, 2008 U.S. Dist. Lexis, 51649, at *4-5

18   (C.D. Cal. July 3, 2008); Smith v. Shalala, 856 F. Supp. 118,

19   122 (E.D. N.Y. 1994) (explaining that a physician's assistant

20   is not an acceptable medical source and is accorded less

21   weight).

22       Here, the only medical professional to state that

23   Plaintiff had any work limitation was a physician's assistant

24   who, on May 19, 2004, stated that Harrington's pain has

25   progressed and is "no longer controlled" with conservative

26   treatment, so "employment at this time is impractical."

27   (Admin. R. 171.)

28

1    ALJ Parker gave three reasons for rejecting Anderson's

2    opinion.

3              First, the determination of disability is a
               determination reserved to the Commissioner.
4              Secondly, the claimant's osteoarthritis that
               is alleged is not evidenced on x-rays and
5              the level of pain allegations are not
               supported by the claimant's level of pain
6              medication.  Third, Ms. Anderson did not set
               out the individual limitations that claimant
7              has in her work related abilities.

8    Id. at 21.  The ALJ determined that Anderson's opinion

9    conflicted with the medical evidence in the record, including

10   the opinion of "acceptable medical sources" that Plaintiff

11   was capable of working with restrictions.  Although a more

12   complete discussion of his reasons for rejecting the

13   physician assistant's opinion would have been helpful, the

14   ALJ gave specific and legitimate reasons for rejecting her

15   opinion.

16   F.    **Whether the ALJ Ignored Evidence from a Treating**

17         **Physician**

18         Finally, Harrington argues that "[t]he ALJ did not

19   evaluate the substantial evidence that Plaintiff suffered

20   from diabetic pedal neuropathy, arteriosclerotic disease of

21   the feet and bilateral bunions of the feet." (Pl.'s Mem. P.

22   & A. 24.)  She states that "Dr. Taubman's records contradict

23   the testimony of the medical expert that Plaintiff's diabetes

24   was under control and did not cause any end organ damage."

25   (Id. (citation omitted).)  Plaintiff maintains that the

26   failure to evaluate Dr. Taubman's treatment records requires

27   that her case be remanded.  (Id.)

28

1    The Commissioner argues, "The ALJ properly relied on the

2    State Agency physicians' opinions, which were consistent with

3    the overall record." (Def.'s Mem. P. & A. 6 (citation

4    omitted).)  Defendant explains that "none of Plaintiff's

5    doctors found limitations in excess of the RFC finding, . . .

6    [and] Dr. Taubman, for instance, did not mention any

7    restrictions to address Plaintiff's foot problem." (Id. at 6

8    (citations omitted) (footnote omitted).)

9        The opinion of an examining doctor is entitled to

10   greater weight than that of a nonexamining doctor.  Lester,

11   81 F.3d at 830 (citing Pitzer v. Sullivan, 908 F.2d 502, 506

12   (9th Cir. 1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir.

13   1984)).  "In addition, the regulations give more weight to .

14   . . specialists concerning matters relating to their

15   specialty over that of nonspecialists."  Holohan v.

16   Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing 20

17   C.F.R. §§ 404.1527(d)(3), (5)).

18       "[W]here the treating doctor's opinion is not

19   contradicted by another doctor, it may be rejected only for

20   'clear and convincing' reasons."  Lester, 81 F.3d at 830

21   (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir.

22   1991)); see also Thomas, 278 F.3d at 957.  "Even if the

23   treating doctor's opinion is contradicted by another doctor,

24   the Commissioner may not reject this opinion without

25   providing 'specific and legitimate reasons' supported by

26   substantial evidence in the record . . . ."  Lester, 81 F.3d

27   at 830 (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.

28   1983)).

1    "[T]he findings of a nontreating, nonexamining physician

2    can amount to substantial evidence, so long as other evidence

3    in the record supports those findings." Saelee v. Chater, 94

4    F.3d 520, 522 (9th Cir. 1996).  The nonexamining physician's

5    opinion must be "supported by other evidence in the record

6    and [be] consistent with it." Morgan, 169 F.3d at 600.

7        The ALJ must set out a "'detailed and thorough summary

8    of the facts and conflicting clinical evidence, stating his

9    interpretation thereof, and making findings.'" Id. at 600-01

10   (quoting Magallanes, 881 F.2d at 750).  The ALJ is not

11   required to discuss each item of evidence, but he must

12   explain why "significant probative evidence has been

13   rejected." Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393,

14   1394-95 (9th Cir. 1984).

15       Here, ALJ Parker noted that "Dr. Taubman stated that the

16   claimant has a diabetic pedal neuropathy, arteriosclerotic

17   disease of the feet and bilateral bunions of the feet."

18   (Admin. R. 20.)   The ALJ observed that Dr. Taubman "only

19   prescribed wearing rooming [sic] shoes.  He did not mention

20   any work related restrictions." (Id. (citations omitted).)

21   The doctor did not find that the impairment significantly

22   affected Plaintiff's ability to perform work activities.  The

23   treating physician did not impose any work-related

24   restrictions because of Plaintiff's foot problems;

25   consequently, the ALJ's functional capacity findings were

26   consistent with Dr. Taubman's conclusions.

27       Although ALJ Parker gave the state agency physician's

28   opinion "significant weight," he specifically addressed

49

1   Plaintiff's treating physician's opinions and made findings
2   which were supported by the state agency physicians and were
3   consistent with the medical record.

### VII.   CONCLUSION

5       For the reasons set forth above, Plaintiff's Motion for
6   Summary Judgment is **GRANTED** in part, and Defendant's Cross-
7   Motion for Summary Judgment is **DENIED**.  This case is **REMANDED**
8   to the Commissioner for further proceedings with directions
9   to elicit testimony from the vocational expert consistent
10  with Social Security Ruling 00-4p and this Order.

12  DATED:   September 29, 2008

    _____
    Hon. Jeffrey T. Miller
14  United States District Judge

cc:     Judge Brooks
16          All parties of record